UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FOURTEK TEKNOLOJI VE GUVENLIK
SISTEMLERI, A.S. d/b/a FOURTEK
TECHNOLOGY AND SECURITY SYSTEM,
INC.,

                       Plaintiff,

      -against-

GSI-ORIENT, INC.,

                       Defendant.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
19 CV 3555 (RRM) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

      On June 17, 2019, plaintiff Fourtek Teknoloji Ve Guvenlik Sistemleri, A.S., d/b/a Fourtek Technology and Security System, Inc. ("Fourtek"), commenced this action against GSI-Orient, Inc. ("GSI-Orient" or "GSI"), seeking damages and alleging breach of contract, fraudulent misrepresentation, false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., unjust enrichment, constructive trust, and quantum meruit, in connection with an alleged fraudulent scheme to deprive plaintiff of monies paid to procure the delivery of 340 Trijicon ACPG 4x32 scopes (the "scopes"). (Compl.).[1]

      On July 31, 2019, when defendant had failed to file an Answer or otherwise respond to the Complaint, plaintiff requested that a Certificate of Default enter against defendant. (ECF No. 12). On August 8, 2019, the Clerk of Court entered a default against GSI-Orient and on August 26, 2019, plaintiff filed a motion for default judgment. The motion was referred to the undersigned on September 18, 2019.

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed June 17, 2019, ECF No. 1.

1

For the reasons set forth below, this Court respectfully recommends that plaintiff's motion for default judgment be granted and that plaintiff be awarded $275,872.11 in damages, plus $68.02 per day in interest accrued through the date of final judgment.[2]

## FACTUAL BACKGROUND

Plaintiff Fourtek alleges that it is a Turkish company, with its principal place of business located in Ankara. (Compl. ¶ 6). Fourtek is in the business of supplying high-tech products and services to both public and private entities in Turkey, and Ender Laçin is Fourtek's Board Chairman. (Id. ¶¶ 6-8). Defendant GSI-Orient is an entity registered in Suffolk County, but with a registered address of 153 E. 32nd Street, Apt. 7A, New York, N.Y. (Id. ¶ 9). Plaintiff alleges that, according to GSI's own representations, the company is in the business of delivering high quality systems, services, products, and training relating to defense and counter-terrorism. (Id. ¶ 10).

According to the Complaint, Mr. Laçin from Fourtek met Berk Matt Yahic, President of GSI-Orient, approximately two years ago, and at that time Mr. Yahic discussed the ability of GSI to provide Fourtek with certain specified scopes for delivery to Turkey. (Id. ¶¶ 13-15). Fourtek was interested in bidding on a contract to deliver 340 of such scopes to the Turkish Ministry of Internal Affairs National Police Department ("TNPD"). (Id. ¶ 15). Yahic assured Fourtek that GSI could deliver the scopes matching the prescribed specifications to Turkey within the delivery parameters. (Id. ¶¶ 16-17). Fourtek informed GSI that there would be penalties assessed for noncompliance with the delivery schedules. (Id. ¶ 16).

---

[2] As of February 26, 2020, the date of this Report and Recommendation, accumulated interest equals $39,995.76. (See discussion infra at 19-20).

2

In reliance on GSI's representations, Fourtek bid on and was awarded the TNPD contract. (Id. ¶¶ 18, 19). On April 20, 2018, Fourtek entered into a contract with the TNPD to supply 340 firearm scopes in exchange for the sum of $875,500. (Id. ¶ 20, Ex. B[3]). Plaintiff was required to post a performance bond in the amount of $52,530, along with a stamp duty in the amount of $8,299.74. (Id. ¶ 21, Ex. C[4]). Under the contract, plaintiff was required to deliver the specified scopes by July 19, 2018. (Id. ¶ 22). Only in the event of force majeure would plaintiff be allowed to seek extensions of the delivery deadline. (Id. ¶ 23). The contract authorized the TNPD to impose monetary penalties or terminate the contract in the event of plaintiff's failure to perform the contract as required, and Turkish Public Law also permitted the imposition of additional penalties, including forfeiture of the performance bond and exclusion from future bids and contracts. (Id. ¶¶ 24-27).

Plaintiff alleges that during the conversations between Mr. Laçin and Mr. Yahic, GSI represented that it would supply Fourtek with the 340 Trijicon ACOG 4x32 scopes; the scopes would ship from New York to a location in Turkey on or before July 19, 2018; and that GSI would procure and deliver the scopes required under the TNPD contract. (Id. ¶¶ 28-29). Based on GSI's representations, plaintiff made a down payment of $200,000 to GSI on July 7, 2018, with the remainder of the $541,760.00 total to be paid after delivery. (Id. ¶¶ 31, 33, Exs. D,[5] E[6]).

---

[3] Citations to "Ex. B" refer to the April 12, 2018 contract between the parties, attached as Exhibit B to plaintiff's Complaint, ECF No. 1-2.

[4] Citations to "Ex. C" refer to a November 4, 2018 statement regarding the performance bond, attached as Exhibit C to plaintiff's Complaint, ECF No. 1-3.

[5] Citations to "Ex. D" refer to a May 17, 2018 Invoice, attached as Exhibit D to plaintiff's Complaint, ECF No. 1-4.

[6] Citations to "Ex. E" refer to a document allegedly showing the transfer of funds for the scopes down payment, attached as Exhibit E to plaintiff's Complaint, ECF No. 1-5. The Court notes that quality of the copy of the document has rendered it largely unreadable.

The agreement was confirmed by a Proforma Invoice dated May 17, 2018, sent by GSI to Fourtek. (Id. ¶ 32, Ex. D).

Plaintiff alleges that Mr. Yahic made numerous representations and reassurances to Fourtek that he would have no problem finding and delivering the scopes, and bringing a sample scope to Turkey for inspection in February 2018. (Id. ¶ 35). Mr. Yahic told Fourtek that GSI would be obtaining the scopes from Scopelist and he provided Fourtek with an agreement between GSI and Scopelist, dated April 12, 2018. (Id. ¶¶ 36-37, Ex. F[7]). According to the Complaint, Scopelist is a web-based scope and firearms distributor that does not enter into written agreements. (Id. ¶ 38). Plaintiff alleges that the Scopelist agreement and GSI's representations were knowingly false and designed to perpetuate a fraudulent scheme by assuring Fourtek that GSI would deliver the scopes as promised. (Id. ¶¶ 37, 39).

Plaintiff alleges that when Mr. Laçin made inquiries about the status of the shipment and requested a delivery schedule, Mr. Yahic either failed to reply or made various excuses for the delay in shipping. (Id. ¶ 40). Among other excuses, Mr. Yahic claimed that the hazmat process had not been completed; the scopes had not been inspected due to Cyber Monday (in July); the scopes had been confiscated by U.S. Border Control and Customs ("CBP") for violations of the International Traffic in Arms Regulations ("ITAR"); and that the IRS had to receive the CBP penalty before the scopes could be released. (Id. ¶ 40). Anticipating that there would be a delay in delivery, Fourtek obtained an extension under the TNPD contract until August 27, 2018. (Id. ¶ 41). Thereafter, Mr. Yahic told Fourtek that he had intentionally mislabeled the scopes as "sporting goods" to circumvent the ITAR, and he sent documentation allegedly from the CBP

---

[7] Citations to "Ex. F" refer to an April 12, 2018 contract signed by GSI Orient, Inc, attached as Exhibit D to plaintiff's Complaint, ECF No. 1-6.

4

indicating that the delay to ship the scopes was because the goods were "'counterfeit'" and in violation of ITAR. (Id. ¶¶ 42, 43, Ex. G[8]). Plaintiff alleges that the documents from the CBP were "fake" and intended to further deceive Fourtek into believing that GSI had performed according to the contract. (Id. ¶ 44). Apart from the claimed ITAR violation and the CBP determination that the goods were counterfeit, GSI also told Fourtek that the scopes were detained due to sanctions between the United States and Turkey. (Id. ¶ 45, Exs. G, H[9]).

In a letter dated August 31, 2018, the TNPD terminated the contract with Fourtek for failing to deliver the scopes. (Id. ¶ 46, Ex. I[10]). In a subsequent letter, dated October 4, 2018, the TNPD forfeited the $52,530.00 paid by Fourtek as a performance bond, along with assessing Fourtek $15,042.37 that the TNPD was forced to pay to cover the difference in the scopes that it ultimately procured. (Id. ¶ 47). Although GSI assumed responsibility for Fourtek's monetary loss, stating "'I will pay for both the penalty and your loss,'" GSI has never paid. (Id. ¶¶ 49-51). Fourtek was required to pay $15,042.37 to the TNPD to cover the procurement of scopes from another source. (Id. ¶ 48).

Plaintiff brings claims for fraudulent misrepresentation (Count I), false advertising under the Lanham Act (Count II), breach of contract (Count III), quantum meruit (Count IV), unjust enrichment (Count V), and constructive trust (Count VI).[11] Plaintiff seeks compensatory

---

[8] Citations to "Ex. G" refer documentation regarding delay in shipment of scopes, attached as Exhibit G to plaintiff's Complaint, ECF No. 1-7.

[9] Citations to "Ex. H" refer to a letter from Yahic regarding sanctions between the U.S. and Turkey, attached as Exhibit H to plaintiff's Complaint, ECF No. 1-8.

[10] Citations to "Ex. I" refer to an August 31, 2018 letter from the TNPD terminating the contract, attached as Exhibit I to plaintiff's Complaint, ECF No. 1-9.

[11] In its motion for default judgment, plaintiff only seeks damages on the fraudulent misrepresentation, false advertising, and breach of contract claims, and states that the quasi-contract claims (quantum meruit, unjust enrichment, and constructive trust) listed in the Complaint are now moot because Fourtek has demonstrated the existence of a valid contract. (Pl.'s Mem. at 9, n. 2 (citing Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH

5

damages of $200,000 plus interest, lost profits to be determined at trial, damages for loss of good will, punitive damages, treble damages in accordance with 15 U.S.C. § 1117, attorneys' fees and costs. (Id. at p. 16).

Following the filing of the Complaint on June 17, 2019, plaintiff served a copy of the summons and Complaint on the defendant through the Secretary of State. (Id., Ex. A[12]). When defendant failed to answer or otherwise move with respect to the Complaint, the Clerk of Court entered a default on August 8, 2019. (ECF No. 13). On August 26, 2019, plaintiff filed a motion for default judgment and sent the papers to defendant's business address at 153 E. 32d Street, Apt. 7A, New York, N.Y. 10016, which is the address designated by GSI for service of process with the New York Department of State. (Resciniti Supp. Aff.[13] ¶¶ 3, 4). The papers were sent via FedEx and signed for by an individual named "B. Benny" on August 27, 2019. (Resciniti Supp. Aff. ¶ 5). The following day, someone went to FedEx's website, prepared a shipping label without a return address but with a mailing address directed to plaintiff's counsel's office. (Id. ¶ 6). The label was used to mail back the unopened motion papers; plaintiff's counsel then received the unopened papers on August 30, 2019. (Id. ¶¶ 6, 7, Resciniti Ex. C[14]).

---

v. Salzman, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013))). As the defendant has not challenged the allegations in the Complaint, the Court takes the allegations in the Complaint as true for purposes of this motion. Accordingly, the Court assumes that there was a valid contract between Fourtek and GSI (see discussion infra at 10) and so does not discuss the quasi-contract claims further.

[12] Citations to "Ex. A" refer to the New York State Department of State record attached as Exhibit A to plaintiff's Complaint, ECF No. 1-1.

[13] Citations to "Resciniti Supp. Aff." refer to the Supplemental Affirmation of Marina Resciniti, Esq., dated September 12, 2019, ECF No. 16.

[14] Citations to "Resciniti Ex. C" refer to Exhibit C attached to the Resciniti Supplemental Affirmation, ECF No. 16-3. Exhibit C is a copy of a FedEx shipping label, as described in paragraph 6 of the Resciniti Supplemental Affirmation.

## DISCUSSION

A.  Legal Standard

Currently before the Court is plaintiff's Motion for Default Judgment, pursuant to Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. Id.; see Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a determination as to damages. See Fed. R. Civ. P. 55(b). That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989); see also Transportes Aereos de Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985).

The Second Circuit has warned that default judgment is an extreme remedy that should only be used as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against the need to provide "litigants a reasonable chance to be heard." Enron Oil

Corp. v. Diakuhara, 10 F.3d at 96; see also Meehan v. Snow, 652 F.2d at 277. It is well settled that defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party. Id. Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A trial court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved — the more money involved, the less justification for entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default

judgment may have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Upon entry of default, defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. Id.; Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013).

It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability as a matter of law on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiff has met that burden, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, the court "retains discretion under [Federal Rule of Civil Procedure] 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . ." Id. at 84 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65); see also Atlantic Recording Corp. v. Brennan, 534 F. Supp. 2d 278, 283 (D. Conn. 2008) (denying a motion for default judgment and noting that in deciding a motion for default judgment, the court must consider whether plaintiff's complaint adequately stated a claim upon which relief can be granted).

B. Default Determination

In this case, it is beyond dispute that defendant is in default, since it has failed to file an Answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, and failed to

9

challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (observing that "[the defendant's] default is crystal clear — it does not even oppose this motion"). While a defaulting defendant admits all well-pleaded factual allegations apart from those relating to damages, it remains incumbent on the Court to review the allegations in the complaint to determine if plaintiff has met its burden to ensure the elements of each claim have been pleaded adequately. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

1. Breach of Contract Claim

Plaintiff alleges breach of contract. (Compl. ¶¶ 70-76). In order to allege a claim for breach of contract under New York law, plaintiff must allege that: 1) the parties entered into an agreement; 2) plaintiff performed its obligations under the agreement; 3) defendant failed to perform; and 4) plaintiff suffered damages as a result. VisionChina Media Inc. v. Shareholder Repr. Servs., LLC, 109 A.D.3d 49, 58, 967 N.Y.S.2d 338, 343 (1st Dep't 2013); see also McEssy v. Gray, No. 515 CV 1462, 2016 WL 10518458, at *10 (N.D.N.Y. Aug. 11, 2016); Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 181, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465, 471 (N.Y. 2011); N.Y. Jur. 2d Contracts § 435 (citing cases).

In the Complaint, plaintiff alleges that Fourtek and GSI entered into a valid contract in the form of an invoice created by GSI, which required GSI to procure and deliver 340 Trijicon scopes by July 19, 2018. (Compl. ¶¶ 30-32, 71). In exchange, Fourtek would pay $200,000 to GSI prior to delivery, with the remaining $341,760 to be paid after delivery. (See id. ¶¶ 31, 73). Fourtek alleges that it performed its obligation under the contract by paying GSI the $200,000 initial payment, but that GSI failed to perform in that it failed to deliver the scopes as promised. (Id. ¶¶ 73, 74). As a consequence, the TNPD terminated its contract with Fourtek and plaintiff was assessed penalties in the form of forfeiture of the performance bond, as well as assessments

stemming from the additional amounts the TNPD paid to make up the difference between the Fourtek-GSI contract and the contract the TNPD ultimately obtained with another supplier.

Accordingly, based on a review of the allegations in the Complaint,[15] the Court finds that plaintiff has pleaded all the necessary elements to state a claim for breach of contract.

2. Fraudulent Misrepresentation Claim

Plaintiff also raises a claim for fraudulent misrepresentation. (Compl. ¶¶ 52-59). In order to establish a claim for fraudulent misrepresentation, a plaintiff must plead: 1) that defendant made a misrepresentation or omission of material fact which was false and known to defendant to be false; 2) the misrepresentation or omission was made for the purpose of inducing plaintiff's reliance thereon; 3) plaintiff justifiably relied on the misrepresentation or omission; and 4) plaintiff was injured. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370 (N.Y. 1996); Gosmile, Inc. v. Levine, 81 A.D.3d 77, 81, 915 N.Y.S.2d 521 (1st Dep't 2010); Tsinias Enters. Ltd. v. Taza Grocery, Inc., 172 A.D. 3d 1271, 1272 (2d Dep't 2019). A party may not recover both under fraudulent misrepresentation and breach of contract if the claims are based on identical circumstances. Yan Chen v. Wen Fang Wang, 177 A.D.3d 694, 697, 111 N.Y.S.3d 703, 706 (2d Dep't 2019); Pugni v. Giannini, 163 A.D.3d 1018, 1020, 83 N.Y.S.3d 491, 493 (2d Dep't 2018) (holding that claims would be "duplicative" if based on identical circumstances unless plaintiff "allege[s] that the misrepresentation resulted in any loss independent of the damages allegedly incurred for breach of contract").

In the Complaint, plaintiff alleges that GSI made numerous representations as to its ability to procure and deliver the specified scopes from New York to Turkey. (Compl. ¶ 53).

---

[15] The defendant has not challenged the allegations in the Complaint; therefore, the Court takes the allegations as true for purposes of this motion.

11

Among other things, plaintiff alleges that GSI represented that: 1) it could procure and deliver the scopes by July 19, 2018; 2) it had procured them on or around June 4, 2018; 3) a document sent to Fourtek was a contract to purchase the scopes from Scopelist; 4) the scopes were delivered to Customs on July 19, 2018; 5) the scopes were not inspected due to Cyber Monday (in July); 6) if given an extension, GSI could deliver the scopes by August 10, 2018; 7) documents purporting to be from CBP were genuine when they were fake; and 8) CBP had confiscated the scopes. (Id. ¶¶ 40(c), (d), 53(a)-(f)). Plaintiff claims that GSI also misrepresented its ability to export the scopes to Turkey, misrepresented its experience, and failed to tell plaintiff that it was unfamiliar with CBP and ITAR procedures and required documentation. (Id. ¶¶ 53(g)-(i)).

Plaintiff alleges that these representations and omissions were false because GSI never procured the scopes, or if it did, the scopes were counterfeit. (Id. ¶¶ 55(a)-(b)). GSI knew it could not deliver within the TNPD timeframe even though it represented otherwise. (Id. ¶ 55(c)). Moreover, GSI never obtained the proper CBP paperwork under ITAR and therefore the scopes could not be delivered, but GSI never told plaintiff, preventing Fourtek from covering and avoiding damages. (Id. ¶¶ 55(d)-(e)). In addition, plaintiff alleges that GSI intended to defraud plaintiff by providing false paperwork from Scopelist and the CBP. (Id. ¶ 56). Plaintiff alleges that GSI knew that its representations were false and made them in an effort to induce plaintiff to enter into the contract and pay GSI $200,000. (Id. ¶ 57).

These allegations clearly satisfy the first three elements of the fraudulent misrepresentation claim. However, the Court sees no distinction between the circumstances of plaintiff's fraudulent misrepresentation and breach of contract claims. Both stem from the same circumstances – the Fourtek and GSI contract, and the subsequent failure of GSI to deliver on the

terms of the contract. Nor does the plaintiff allege any loss from the fraudulent misrepresentation that is independent of the damages allegedly incurred from breach of contract. See Pugni v. Giannini, 163 A.D.3d at 1020, 83 N.Y.S.3d at 493. As such, the Court respectfully recommends a finding that the fraudulent misrepresentation claim is duplicative of the breach of contract claim.

### 3. False Advertising Under the Lanham Act

Fourtek has also alleged violations of the Lanham Act's provision on false advertising, 15 U.S.C. § 1125(a). (See Compl. ¶¶ 60-69). Under this section of the Act, if a person uses "false or misleading description[s] of fact, or false or misleading representations of fact" as to the "nature, characteristics, qualities, or geographic origin" in advertising or promoting goods and services or commercial activities, that person may be liable to "any person who believes that he or she is or is likely to be damaged by such act." Id. To recover under this provision, a plaintiff must show that "some consumers were actually confused" by the advertising or that defendant "deliberately or intentionally advertised its product falsely," and that the plaintiff's injury was caused by the false advertising. Barr Labs. Inc. v. Quantum Pharmics, Inc., 827 F. Supp. 111, 113 (E.D.N.Y. 1993).

To demonstrate a violation of the Lanham Act's provision on false advertising, a plaintiff must show either "that some consumers were actually confused by the defendant's false advertising" or "that the defendant deliberately or intentionally advertised its product falsely, which would pretermit a showing of actual consumer confusion." Barr Labs., Inc. v. Quantum Pharmics, Inc., 827 F. Supp. at 117 (citing Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 139-40 (2d Cir. 1991)). In other words, the plaintiff must show either that "that the challenged advertisement is literally false, i.e., false on its face," or

13

"that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010) (quoting Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007)). To be actionable, the misrepresentation must be "material," that is, speaking to an "inherent quality of characteristic of the product." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001). If the advertisement on its face is susceptible to more than one reasonable interpretation, then the plaintiff must show actual consumer confusion to have an actionable claim. C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013) (citing Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d at 158). Mere "puffery" – vague claims of superiority, exaggerations, and boasts upon which no reasonable buyer would rely – is not actionable as false advertising. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159-60 (citing Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995)). See, e.g., Weight Watchers Int'l, Inc. v. Noom, Inc., 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) (holding that a weight loss company's claim that it would provide customers "a healthier you in 16 weeks" was non-actionable puffery).

In summary, to succeed on a false advertising claim, a plaintiff must show (1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, (5) damaged or will likely damage the plaintiff, and (6) actually confused consumers, or was likely to confuse consumers. See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d at 112; C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d at 242. In addition, the plaintiff must show that the statement was not mere puffery. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159-60.

Here, Fourtek claims that GSI deliberately or intentionally advertised its product falsely through in-person, telephone and internet representations. (Pl.'s Mem.[16] at 11). Specifically, the Complaint alleges that GSI "advertised, promoted and held itself out to be in the business of delivering high-quality systems, products, services, consulting and training pertaining to defense and counter-terrorism." (Compl. ¶ 61). GSI advertised and represented to Fourtek that it was able to supply the scopes in Turkey within the time parameters set by the TNPD. (Id. ¶ 62). Plaintiff claims that these deceptions were material to Fourtek's injuries because these representations were what led Fourtek to expect that GSI would deliver services in accordance with these representations. (Id. ¶ 66).

Plaintiff asserts that these allegations are sufficient to sustain a claim under the Lanham Act for false advertising. (Pl.'s Mem. at 11). Plaintiff further argues that because the representations and advertisements were deliberately made to con customers such as Fourtek into believing that GSI had the experience to deliver, there is no need for plaintiff to show actual customer confusion. (See id.) Plaintiff avers that GSI engaged in false advertising when GSI "advertised, promoted and held itself out to be in the business of delivering high-quality systems, products, services, consulting and training pertaining to defense and counter-terrorism." (Compl. ¶ 61).[17]

In short, plaintiff here argues that two different types of statements should qualify as false advertising: the statements GSI made to Fourtek in the course of its breach of contract (see discussion supra at 10), and statements GSI made to the public at large on its website. (See

---

[16] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, ECF No. 20, filed October 31, 2019.
[17] The statements in this paragraph are the only statements that plaintiff cites as false advertising on GSI's website.

15

Compl. ¶¶ 63-65). First, the statements GSI made directly to Fourtek do not qualify as false advertising, because the statements were not made in connection with commercial advertising or promotion; rather, they were made directly to Fourtek during the course of their business dealings, after Fourtek had already decided to bargain with GSI. Second, Fourtek asserts that GSI engaged in false advertising on its website by holding itself out as "possess[ing] the 'experience and competence' to deliver 'high quality [ . . .] products and services' in accordance with its 'international business partners' aspirations' among other things." (Pl.'s Mem. at 11 (quoting Pl.'s Mem. Ex. A[18])). These vague statements, at most, are puffery – they are so vague that they can be understood as "nothing more than a mere expression of opinion." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d at 160.

The Court thus respectfully recommends a finding that GSI did not engage in false advertising under the Lanham Act.

C.  Damages

Based on a review of the allegations in the Complaint, which due to defendant's default have not been contradicted, the Court finds that plaintiff has stated the elements of a claim for breach of contract. Once a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). For the purposes of an inquest, the court accepts as true all factual allegations in the Complaint, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at

---

[18] Citations to "Pl.'s Mem. Ex. A" refer to screenshots of GSI's website, attached as Exhibit A to plaintiff's Memorandum in Support of the motion for default judgment, ECF No. 20-2.

65. The plaintiff must prove damages, either by an evidentiary hearing or, should a defendant fail to appear, exhibits submitted by the plaintiff. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988).

Plaintiff seeks the return of the $200,000 that it paid to GSI as a security deposit. (Pl.'s Mem. at 13). Plaintiff also seeks repayment of the stamp duty, the forfeited performance bond, and the costs charged to Fourtek to cover the replacement scopes. (Id.) Plaintiff argues that it is entitled to both general and consequential damages as a result of GSI's breach of the contract, because the penalties imposed upon Fourtek were well within the contemplation of the parties at and prior to the execution of the contract. (Id.; see also id. at 9 (citing Schonfeld v. Hilliard, 218 F.3d 164, 175 (2d Cir. 2000))). The New York Court of Appeals has held that "[i]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 192, 886 N.E.2d 127, 130, 856 N.Y.S.2d 505, 508 (N.Y. 2008) (quoting Kenford Co. v. County of Erie, 73 N.Y.2d 312, 319, 537 N.E.2d 176, 540 N.Y.S. 2d 1 (N.Y. 1989)) (modifications in original); see also Rose Lee Mfg. v. Chem. Bank, 186 A.D.2d 548, 551, 588 N.Y.S.2d 408, 411 (2d Dep't 1992) (holding that "[t]he nature, purpose and particular circumstances of the contract known by the parties are some of the factors to be considered in determining what was in the reasonable contemplation of the parties at or prior to the execution of the contract").

In this case, plaintiff alleges that GSI was aware that Fourtek was procuring the scopes in connection with the TNPD contract. (Pl.'s Mem. at 13). Plaintiff asserts that Mr. Yahic on behalf of GSI traveled to Turkey to bring a sample scope, assuring both Fourtek and the TNPD that GSI was capable of procuring the scopes and delivering them in a timely manner. (Id.) Plaintiff specifically notified GSI that if the TNPD awarded Fourtek the contract, there would penalties for noncompliance. (Compl. ¶ 16). Thus, plaintiff argues that it is entitled to recover: 1) $200,000, representing the security deposit paid to GSI; 2) $15,042.37, which was charged to Fourtek to cover the cost of obtaining the scopes from an alternate source; 3) $8,299.74, for the stamp duty paid by Fourtek; and 4) $52,530, representing the amount of the forfeited performance bond. (Pl.'s Mem. at 14).

Having reviewed plaintiff's papers and the allegations in the Complaint, the Court respectfully recommends a finding that GSI was fully aware that plaintiff would face damages and penalties if the scopes were not timely delivered to the TNPD. Plaintiff alleges that not only did Mr. Yahic of GSI discuss the delivery parameters with plaintiff, but Fourtek informed GSI that there would be penalties assessed for noncompliance with the delivery schedules. (Compl. ¶¶ 13-15, 16). Indeed, plaintiff claims that after the failure to deliver as promised, Mr. Yahic of GSI stated that he would "pay for both the penalty and the loss." (Id. ¶¶ 49-51) (emphasis added). These claims have not been disputed by GSI. Accordingly, the Court respectfully recommends a finding that not only is the plaintiff entitled to recover the loss of the $200,000 security bond and the $15,042.37 expended to cover the contract, but the additional penalties in the form of the stamp duty and forfeited performance bond were within the contemplation of the parties at the time of the execution of the contract. Accordingly, it is respectfully recommended

that plaintiff be awarded a total of $275,872.11, representing the $200,000 security bond; the $15,042.37 cover cost; the $8,299.74 stamp duty; and the $52,530 performance bond.

Plaintiff also seeks pre-judgment interest running through the date of final judgment, pursuant to C.P.L.R. § 5004, which plaintiff calculates as $68.02 per day. (Pl.'s Mem. at 15). C.P.L.R. § 5004 provides that the statutory pre-judgment interest rate on a breach of contract claim is 9% per year. Under the CPLR, pre-judgment interest is computed from the earliest ascertainable date from the date it was incurred. See S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group, Co., 07 CV 4909, 2012 WL 958528, *35 (E.D.N.Y. Jan. 13, 2012). Courts calculate the "earliest ascertainable date" as the date of the contract breach. See Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (holding that [a] cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach); Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp., No. 18 CV 04175, 2019 WL 5394502, at *2 (E.D.N.Y. Oct. 22, 2019) (holding that "interest should be computed from the date on which defendant breached the contract by failing to pay the amount owed").

Here, plaintiff argues that the earliest ascertainable date is July 7, 2018 – the date that Fourtek made the $200,000 down payment to GSI and so "the earliest ascertainable date that GSI deprived Fourtek of its funds." (Pl.'s Mem. at 10). However, elsewhere in its Memorandum, without explanation, Plaintiff calculates the earliest date as July 11, 2018. (See id. at 15). Rather than either of the two dates plaintiff proposes, the Court reasons that the earliest ascertainable date is July 19, 2018 – the date on which GSI was meant to, but failed to, deliver the scopes, and therefore breached the contract. (See id. at 2). The Court thus respectfully recommends that the District Court add interest of $68.02 per day through the date of its final judgment. The Court calculates that 588 days have passed between July 19, 2018 and February 26, 2020, the date of

this Report and Recommendation. At a rate of $68.02 per day, interest accrued to date totals $39,995.76.

## CONCLUSION

For the reasons given above, the Court respectfully recommends that the plaintiff be awarded $275,872.11 in damages, plus interest through the date of final judgment.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 26, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York